IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**BETHANY DUNN**                                                                                                  **PLAINTIFF**

V.                                                                         **CIVIL ACTION NO. 2:23-cv-72-KS-MTP**

**STATE FARM FIRE AND**
**CASUALTY COMPANY**                                                                                         **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

**I.      BACKGROUND**

This cause comes before the Court on Defendant State Farm Fire and Casualty Company's Motion to Strike Witness Elliot Flood [35], [36]. The motion has been fully briefed. [39], [42]. Accordingly, having reviewed the parties' submissions, the relevant rules and legal authorities, and otherwise being duly advised in the premises, for the reasons set forth herein, the Court finds that Defendant's motion is well taken in part and not well taken in part. The motion is granted in part and denied in part.

**A. Facts**

This lawsuit arises from claims of property damage to the home of Plaintiff Bethany Dunn ("Dunn") located at 1401 Carterville Road in Petal, Mississippi. Dunn's home was damaged by fire on August 25, 2022, which was determined to be a total loss. As of that date, Dunn insured her property under a policy issued by Defendant State Farm Fire and Casualty Company ("State Farm"). Under Coverage A, the limit of liability for damage to the dwelling was $231,800. Under Coverage B, the limit of liability for damage to personal property was $173,850. The policy contained at ½% deductible of $1,159. Further, it contained a Limited Replacement Cost provision for Coverage B. That provision states that State Farm

"will pay the cost to repair or replace property covered under SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY, except for property listed in item b. below, subject" to other listed limitations and qualifications. [35-2] at p. 26. Item b. states:

> [State Farm] will pay market value at the time of loss for:
> (1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;
> (2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and
> (3) property not useful for its intended purpose.

*Id.* In April 2023, Dunn filed suit against State Farm alleging bad faith denial or refusal to pay her claim. [2] at p. 6-9.

On November 21, 2023, Dunn served her Designation of Expert Witness, designating Elliott Flood to testify that "State Farm conducted a grossly inadequate evaluation, lacked an arguable or legitimate basis for delaying the claim, acted with gross negligence and reckless disregard for the insured's rights, and acted willfully or maliciously after becoming fully aware of its grossly negligent conduct by its willful or malicious obstructionism." [20]; [35-1] at p. 1. Flood's curriculum vitae details his insurance experience. [35-3]. Since 1982, Flood's experience includes working as an attorney on insurance matters, serving as Vice President of Special Investigations at Texas Mutual Insurance Company, serving as General Auditor and Senior vice President of Internal Audit at Texas Mutual Insurance Company, and working as an insurance consultant since 2011. *Id.*

## II.     DISCUSSION

### A. Legal Standard and Applicable Law

Federal Rule of Evidence 702 provides,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

  (b) the testimony is based on sufficient facts or data;
  (c) the testimony is the product of reliable principles and methods; and
  (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies the rule 702 test." *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002) (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)). "When evaluating expert testimony, the overarching concern is whether the expert testimony is 'relevant' and reliable.'" *21ST Mortgage Corporation v. National Security Fire & Casualty Company*, 2011 WL 13104513, *1 (S.D. Miss. 2011) (quoting *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007)).

  District courts must consider five factors when assessing whether the methodology is scientifically valid or reliable: "(1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community." *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 275 (5th Cir. 1998) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-95 (1993)). The Supreme Court said,

> the test of reliability is "flexible," and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination.

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141-42 (1999) (citing *General Electric Co. v. Joiner*, 522 U.S. 136, 142 (1997)). Moreover,

> This Court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." However, the Court's role as gatekeeper is not meant to supplant the adversary system since "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

*Russ v. Safeco Ins. Co. of America*, 2013 WL 1310501, *17 (S.D. Miss. 2013) (first quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); and then quoting *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 596 (1993)).

**B. Arguments**

Defendant filed its motion asking the Court to strike Flood's expert report and exclude his opinions and testimony at trial. Defendant argues that Flood is not qualified by education, experience, or otherwise to opine on damage to personal property, contents evaluation, or depreciation. It also argues Flood's opinions are impermissible legal conclusions, set out non-technical facts and circumstances that do not warrant expert testimony, are not based on sufficient facts or reliable methods, and otherwise are not relevant and should be excluded under Rules 402 and 403. More specifically, Defendant notes Flood is not a licensed adjuster, has no professional experience adjusting losses due to fire, no professional experience adjusting losses of personal property, no professional experience applying depreciation, and his professional experience involving the adjustment of insurance claims did not involve handling of any claims under homeowner's policies or the evaluation of contents claims. Moreover, Defendant argues Flood's opinions are beyond the scope of permissible expert testimony, they are not helpful to a jury, he applied an unreliable methodology, and his opinions are inadmissible under Rules 402 and 403.

Plaintiff argues that this case is about the adjustment and payment of a claim and the fact that Flood does not have much experience with fire loss is immaterial. Plaintiff states that Flood is an expert in adjusting and processing claims and can explain how State Farm did not meet industry standards when it closed the claim with open items, refused to respond to requests for more information, and other actions identified in his report. Plaintiff admits Flood must avoid using terms as "gross negligence," but claims that Flood can explain to the jury the claims file and how State Farm violated industry standards.

Plaintiff notes that Flood does not place a specific value on any of the items but instead focuses

4

on the Defendant's allegedly improper practices in diminishing the value of items not subject to depreciation. Plaintiff notes that Flood relies on Plaintiff's testimony, Plaintiff's loss inventory, and Defendant's acquiescence of the values. Plaintiff states, "Flood's opinion on the topic of valuation is limited to the opinion that the Defendant improperly depreciated non-depreciable items." [39] at p. 7. Plaintiff argues that while Flood does not have specific experience with fire loss, he has the requisite knowledge and experience regarding claims handling. For support, Plaintiff notes Flood's experience working in the insurance business for multiple decades both on behalf of companies and consumers and his testimonial background. As to whether or not Flood's testimony is helpful to the trier of fact, Plaintiff argues that Flood has already calculated dates and timelines for the jury, a jury will not be experienced with reading, reviewing and analyzing a claims file, Flood has put the information from the claims file into a much easier format, and Flood's experience will help the jury's understanding of the claims file. As to reliability, Plaintiff notes that Flood identified books and publications that support his opinions.

### C. Analysis

*1. Qualification*

Defendant argues Flood is not qualified by knowledge, skill, experience, training, or education to opine as to the standards for evaluating and adjusting claims for fire loss under a homeowner's policy nor as to depreciation. Defendant claims Flood's only experience adjusting claims is with Texas Mutual where he exclusively worked on worker's compensation claims, he has not given testimony on behalf of an insurance company being sued by its insured, and he has no professional experience determining valuation of contents or applicable depreciation.

The Court finds that Flood is qualified to give his opinion in this case. Flood became a Licensed Insurance Adjuster in 1997 and worked as an attorney doing insurance work from 1982 to 1983 and from 1986 to 1997. His work as an attorney included insurance defense, coverage opinions, property damage,

claim investigations, insurance bad faith cases, and Homeowner's Property and Liability. From 1997-2004, Flood was the Vice President of Special Investigations at Texas Mutual Insurance Company where he managed the department's personnel, policies, and procedures; oversaw investigations of claims; advised others as to complex claims matters; taught and trained insurance investigators, adjusters, attorneys, and executives; and participated in national insurer industry groups related to claims investigations. From 2004-2011, Flood was the General Auditor and Senior Vice President of Internal Audit at Texas Mutual Insurance Company. Notably, he managed internal audits of compliance with laws, regulations, policies, procedures, and contracts; participated in audit planning and execution for all operational areas; presented audit findings on company compliance and corrective action plans to senior management and the Board of Directors; taught insurance customs and practices to others in the company; and participated in national insurer and auditing groups related to his work. Since 2011, Flood has worked as an insurance consultant in several areas, including Homeowners' Property and Liability. He has provided consulting services in many states, given testimony in a variety of forums, and given presentations at seminars and conferences. Because of Flood's extensive experience in insurance, including working for Texas Mutual Insurance Company for 14 years ending in 2011, the Court finds Flood is qualified to opine and testify in this case.

### 2. Legal Conclusions

Defendant argues Flood's report goes beyond the scope of expert testimony, rendering conclusions of law and should be excluded. As this Court previously explained,

> As to the scope of expert testimony, [a]n opinion is not objectionable just because it embraces an ultimate issue. Nevertheless, an expert may never render conclusions of law. [I]t is the Court's job—not an expert witness's—to instruct the jury as to the applicable law. Nor, may an expert go beyond the scope of his expertise in giving his opinion…It is for the court, and not [the expert], to determine, and to instruct the jury, as to the carrier's legal obligations to its insured. However, [the expert] may testify regarding relevant industry standards applicable to the adjustment of claims and may address whether

6

> defendant's conduct conformed to those standards; but he will be precluded from asserting any opinion that defendant lacked "good faith" or that it acted in "bad faith" in adjusting and denying the claim, as this is patently a legal conclusion.

*Wray v. Geico Indem. Co.*, No. 3:18-CV-622-DPJ-FKB, 2021 WL 3707973, at *1 (S.D. Miss. Aug. 19, 2021) (citations and quotations omitted). "The question of whether State Farm had an arguable basis for denying the [insured's] claim 'is an issue of law for the court.'" *Broussard v. State Farm Fire and Cas. Co.*, 523 F.3d 618, 628 (5th Cir. 2008) (quoting *U.S. Fidelity & Guar. Co. v. Wigginton*, 964 F.2d 487, 492 (5th Cir. 1992)). State Farm specifically challenges Plaintiff's Designation of Expert Witness and paragraphs 16, 17, 19, 21, 23, and 24 of Flood's Opinions section. [35-5] at p. 13-19.

In Plaintiff's Designation of Expert Witness regarding a summary of opinions for Flood, Plaintiff states,

> The cumulative effect of all the noted conduct is that State Farm conducted a grossly inadequate evaluation, lacked an arguable or legitimate basis for delaying the claim, acted with gross negligence and reckless disregard for the insured's rights, and acted willfully or maliciously after becoming fully aware of its grossly negligent conduct by its willful or malicious obstructionism.

[35-1] at p. 1. The Court finds that Flood will be prohibited to testifying that Defendant conducted a grossly inadequate evaluation because this conclusion is better left to the jury. As to all other claims in the summary of opinions, these will also be excluded as the Court finds they are legal conclusions. However, Flood will be able to opine and testify about other matters, such as industry standards, customs, and practices.

> 16. On Day 122, State Farm received a letter of representation from Ms. Dunn's law firm, which stated: "Our office represents Bethany Dunn. She has asked me to work with you on resolving her contents claim." The letter noted that a number of items are irreplaceable items that Ms. Dunn cannot afford to replace without further payment from State Farm and requested that State Farm "provide some clarity" on its evaluation of the contents. *This is an obvious example of a letter of representation – any reasonable insurer would accept this representation and communicate with the law firm.*

[36] at p. 6; [35-5] at p. 17 (footnote omitted). Plaintiff argues the statement that any reasonable insurer would accept Dunn's communications from her lawyers as a letter of representation is not a legal

conclusion and Defendant does not explain how the opinion renders a legal conclusion. The Court finds that the italicized portion will be excluded.

> 17. On Day 150, Ms. Dunn's lawyer wrote to State Farm, asking, "Do you need anything to wrap this claim up?" State Farm replied, "Please review prior E-mail as a formal signed letter of representation is needed to move claim forward." As noted, they already had a letter in the file for the last 28 days, and Ms. Dunn confirmed that in a phone call. This only causes the insured's lawyer to spend unnecessary time. *It is another example of grossly negligent claim handling. Further, if it does not demonstrate an attitude of good faith, it is the opposite, being willful or malicious obstructionism.*

[36] at p. 6; [35-5] at p. 17-18 (footnotes omitted). Plaintiff concedes "grossly negligent" should be excluded but argues stating Defendant's actions were an example of "malicious obstructionism" is not a legal conclusion. The Court finds that the italicized portion will be excluded.

> 19. State Farm gave no reasonable explanation for failing to correct its evaluation of the contents. *This contradicts industry practices for good faith claim handling and is another example of willful or malicious obstructionism.*

[36] at p. 7; [35-5] at p. 18. Plaintiff again argues that the opinion that Defendant's actions are further examples of malicious obstructionism is not a legal conclusion and that Defendant does not explain how this opinion is a legal conclusion. The Court finds that Flood will be able to opine as to industry practices for claim handling and whether Defendant acted consistently with them. However, the rest of the italicized portion will be excluded.

> 21. *Any reasonable insurer would consider it a gross and reckless disregard* for the insured's rights to compel them to bring suit to recover amounts due under policies by offering less than what is due.

[36] at p. 7; [35-5] at p. 18. Plaintiff argues reasonableness is an issue of fact as opposed to a legal conclusion and Defendant offers no explanation or case supporting exclusion. The Court finds that the italicized portion will be excluded.

> 23. While State Farm's evaluation initially resulted from rushed, inaccurate, *and grossly negligent conduct* in disregard of the insured's rights, after State Farm was told of the problems, it persisted and would not change its position. *Thus, State Farm willfully or maliciously continued with a lowball evaluation, eventually forcing the insured into litigation.*

[36] at p. 7; [35-5] at p. 19. Plaintiff admits "grossly negligent" may be excluded, but the other opinions

8

should be accepted because Defendant offers nothing more than a conclusory statement supporting exclusion. The Court finds that the italicized portion will be excluded.

> *24. The cumulative effect of all the above-noted conduct is that State Farm conducted a grossly inadequate evaluation, lacked an arguable or legitimate basis for delaying the claim, acted with gross negligence and reckless disregard for the insured's rights, and acted willfully or maliciously after becoming fully aware of its grossly negligent conduct by its willful or malicious obstructionism.*

[36] at p. 7; [35-5] at p. 19. Plaintiff admits "gross negligence" and "reckless disregard" may be excluded but again argues the rest of his opinions should be accepted because Defendant merely offers a conclusory statement that the opinions should be excluded. The Court finds that this opinion will be excluded in its entirety.

### *3. Unhelpful to the Trier of Fact*

Defendant then argues Flood's testimony will not be helpful to the trier of fact.

> [E]xpert testimony not only is unnecessary but indeed may properly be excluded … if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation ….

*Russ v. Safeco Ins. Co. of America*, No. 2:11cv195–KS–MTP, 2013 WL 1310501, *19 (quoting *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962)). Specifically, Defendant challenges the following italicized portions of paragraphs 4, 6, 8, 9, 12, 15, 16, 17, and 20 as well as their accompanying footnotes for singling out certain non-technical facts.

> *4. Ms. Dunn's fire claim started smoothly, with State Farm giving Ms. Dunn a fair settlement for the total loss of her house (Coverage A) in about three weeks, which was Day 22 since the first notice of loss to State Farm. However, delays and excuse-making immediately started up with the contents portion of her claim (Coverage B for the loss of all her home contents in the fire).*
> 6. The first step in a prompt RCV evaluation of contents is to assign an adjuster. *In contrast to the building loss, which was settled 22 days after the first notice of loss, State Farm did not effectively assign the contents adjuster until 30 days after the first notice of loss to State Farm.*
> 8. By day 63, the assigned adjuster had not made reasonable progress on the contents loss evaluation. No adequate basis was documented in the claim for why it has not been

9

> *completed by this time – 63 days is almost three times the 21 days it took to complete the evaluation and make a settlement on the building loss.*
> *9. On day 64, a State Farm Section Manager (a higher-level manager) noted the delay and incompleteness of the evaluation in the context of a complaint made to the Mississippi Department of Insurance.*
> *12. On day 67, State Farm put a rush on completing the evaluation. The evaluation was assigned to a new adjuster, who did not do much of anything. Then, on day 84, it was assigned again to yet another adjuster who rushed it out the same day it was assigned to him.*
> *15. After that payment, Ms. Dunn continued to provide details and pointed out the shortcomings of State Farm's evaluation. State Farm never attempted to correct its evaluation, even after receiving additional information, such as photographs and supplemental inventories.*
> 16. On Day 122, State Farm received a letter of representation from Ms. Dunn's law firm, which stated: "Our office represents Bethany Dunn. She has asked me to work with you on resolving her contents claim." The letter noted that a number of items are irreplaceable items that Ms. Dunn cannot afford to replace without further payment from State Farm and requested that State Farm "provide some clarity" on its evaluation of the contents. *This is an obvious example of a letter of representation – any reasonable insurer would accept this representation and communicate with the law firm.*
> 17. On Day 150, Ms. Dunn's lawyer wrote to State Farm, asking, "Do you need anything to wrap this claim up?" State Farm replied "Please review prior E-mail as a formal signed letter of representation is needed to move claim forward." As noted, they already had a letter in the file for the last 28 days, and Ms. Dunn confirmed that in a phone call. *This only causes the insured's lawyer to spend unnecessary time. It is another example of grossly negligent claim handling. Further, if it does not demonstrate an attitude of good faith, it is the opposite, being willful or malicious obstructionism.*
> 20. By day 219, despite at least two additional letters from Ms. Dunn's law firm asking for a response, with no meaningful response forthcoming, Ms. Dunn filed suit. The case is currently still in litigation.

[36] at p. 12-13; [35-5] at p. 14-18 (footnotes omitted). The Court finds the italicized portions are excluded.

### 4. Reliability and Ipse Dixit

Lastly, Defendant argues Flood did not reasonably apply the unreliable principles and methods to the facts of this case and his opinions are connected to the facts by mere *ipse dixit*. As Judge Ozerden explained,

> [t]he Supreme Court has also held that, in assessing the reliability of an expert's opinion, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the

10

expert." "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *21ST Mortg. Corp. v. Nat'l Sec. Fire & Cas. Co.*, No. 1:10CV214-HSO-JMR, 2011 WL 13104513, at *2 (S.D. Miss. July 12, 2011) (first quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 157 (1999); and then quoting *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Specifically, Defendant claims Flood fails to explain or provide the industry standards against which he compares State Farm's actions, even though he provides quotes about claim handling practices from various sources. Defendant challenges paragraphs 7, 13, and 14.

> 7. State Farm's 20-day Calendar Review by a manager is an example of how insurers implement procedures to ensure that claims are promptly settled. *Twenty days is a reasonable, adequate amount of time to do an evaluation.*

[36] at p. 15; [35-5] at p. 15 (footnote omitted). The court finds that the italicized portion will be allowed.

> 13. *The so-called "rush" evaluation made on day 84 was unreasonably low, far less than merited. Here are the items in which the evaluation was too low:*
>   a. The deductible of $1,159, which had already been used to lower Ms. Dunn's building loss estimate, was taken again in the contents estimate.
>   b. The debris coverage limit of Coverage B was too low. The policy limit allowed for debris was $12,380,12 but State Farm evaluated her maximum debris limit as $10,796.
>   c. *While the RCV value of contents was determined to be $181,102, State Farm subtracted $109,791 (61%) in "depreciation." The depreciation deductions taken on many items were improper, such as taking depreciation on irreplaceable items.* Further, some items were omitted altogether, such as the pool table and lights, which were documented by photographs of the items. In a typical claim, where there is no unreasonable delay, a partial payment of actual cash value (ACV) is made first, and then the difference between ACV and the replacement cost will be paid when new items are purchased. But there is a time limit to replace, and unreasonable delay and unreasonably high depreciation can result in the loss of the right to depreciation, to the great harm of the insured's interests. This illustrates why prompt and accurate evaluations are essential elements of good faith claim handling.

[36] at p. 15-16; [35-5] at p. 16-17 (footnotes omitted). The Court finds that the italicized portion will be excluded. Defendant also challenges footnotes 14 and footnote 7. Footnote 14 states "Additional examples of improper depreciation include but are not limited to items highlighted in yellow on Exhibit 5 to this report." [35-5] at p. 16. Defendant notes that the items were highlighted by Plaintiff and not by an expert qualified in the valuation of personal property. [35-7]. The Court finds that footnote 14 will be excluded.

11

Footnote 7 states,

> State Farm Section Manager note "completed review of the 9.25.2022 estimate after based upon review of the MS DOI complaint" and "Letters - It does not appear we have sent FC0011535 or have documented the file explaining the policy coverages and next steps." The file does not contain any 9/25/22 estimate on the contents loss. That is an apparent fabrication by the manager. If so, that is an unfair claim practice and not evidence of good faith.

[35-5] at p. 15. Defendant argues this is both an impermissible legal conclusion and that the file does in fact contain a 9/25/22 estimate for Coverage A, which is the estimate referenced. [35-8]. The Court finds that footnote 7 will be excluded.

> 14. On day 101, State Farm issued a partial payment of $69,311 to Ms. Dunn. This payment was based on a rush job evaluation that was both unreasonably late, *inadequate, and unreasonably low.*

[35-5] at p. 17 (footnote omitted). The Court finds the italicized portion will be excluded.

### III.   CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that Defendant's Motion to Strike Elliot Flood is **GRANTED in part** and **DENIED in part**.

SO ORDERED AND ADJUDGED this 4th day of June 2024.

/s/ Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE