IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**BETHANY DUNN**                                                                                    **PLAINTIFF**

**VS.**                                                    **CIVIL ACTION NO.: 2:23-cv-72-KS-MTP**

**STATE FARM FIRE AND CASUALTY COMPANY**              **DEFENDANT**

### DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* NO. 1: TO BIFURCATE TRIAL

COMES NOW, the Defendant, **STATE FARM FIRE AND CASUALTY COMPANY**, by and through its counsel of record and files this its Memorandum in Support of Motion *in Limine* No. 1: To Bifurcate Trial, and would show unto the Court as follows:

### INTRODUCTION

Mississippi substantive law requires a "barrier" of separation between the "fundamental issue of liability and the inflammatory issue of egregious conduct" by dividing "both the issue and the evidence regarding punitive damages" from the underlying question of whether Plaintiff is due any additional insurance payments. *Hartford Underwriters v. Williams*, 936 So. 2d 888, 897 (Miss. 2006). To commingle a "close issue of [coverage] … with testimony concerning the issue of how [the insurer] investigated [coverage issues]" is error. *Id.*

To comply with *Hartford*, a bifurcated trial is necessary, separating contract/coverage issues (Phase One) from extracontractual and punitive damages issues (Phase Two). Pursuant to Federal Rule of Civil Procedure 42(b), this Court

has broad discretion to order separate phases for the trial of these discrete issues. *See O'Malley v. U.S. Fidelity & Guaranty Co.*, 776 F.2d 494, 500 (5th Cir. 1985) ("By the explicit language of Fed. R. Civ. P. 42(b), the court has discretion to order separate trials of particular issues 'in furtherance of convenience, or to avoid prejudice, or when separate trials will be conducive to expedition and economy.'").

Accordingly, State Farm moves that the trial of this case be bifurcated as follows:

1. In Phase One, the Court should try the issue of the nature and extent of Plaintiff's covered damages, and all evidence relevant to this discrete issue should be permitted.

2. If the jury finds uncompensated covered damages, the Court should, in its role as "gatekeeper," conduct an evidentiary hearing, as required by Mississippi Code Section 11-1-65(1)(c), to determine whether the issues related to extracontractual and punitive damages should go to the jury at all.

3. If the Court determines that the issues related to extracontractual and punitive damages should go to the jury then, in Phase Two, the Court should try Plaintiff's claims for extracontractual and punitive damages.

As discussed herein, bifurcating the trial in this manner furthers the goals of efficiency and judicial economy and promotes fairness. Such a phased trial adheres to this Court's familiar practice that "the only issue that will be tried in phase one is the coverage claim." *Briggs v. State Farm Fire & Cas. Co.*, 673 Fed. Appx. 389, 391-92 (5th Cir. 2016) (affirming bifurcation of trial with coverage issues tried in phase

one and extracontractual and punitive damages issues tried in phase two); *Schmermund v. Nationwide Mut. Ins. Co.*, 2008 WL 5169396, *3 (S.D. Miss. Dec. 5, 2008) (Senter, J.), *accord Politz v. Nationwide Mut. Fire Ins. Co.*, 2009 WL 1505384, *1 (S.D. Miss. May 28, 2009) (Senter, J.); *Britt v. Mississippi Farm Bureau Casualty Insurance Company*, 2022 WL 619657, *1 (N.D. Miss. Mar. 2, 2022) (*sua sponte* bifurcating the trial pursuant to *Briggs*, 673 F. App'x 389 and Federal Rule of Civil Procedure 42(b)). Only if Plaintiff demonstrates an entitlement to additional insurance payments might "non-contractual damages … come into play" in a second phase. *Schmermund*, 2008 WL 5169396 at *3; *see also Politz*, 2009 WL 1505384 at *1 ("[N]on-contractual damages – mental and emotional distress, for example – potentially do not come into play until after the first phase.").

## **ARGUMENT**

### A. Under Mississippi Law, Claims and Evidence Related to Plaintiff's Breach of Contract Claim Should Be Tried Separately from Claims and Evidence Arising from State Farm's Claims Handling

As a matter of law, Plaintiff's claims for additional coverage payments should be tried in a separate phase, divided from Plaintiff's remaining claims for extracontractual and punitive damages. This Court has recognized in similar situations that "the only issue" to be "tried in phase one is the coverage claim." *Briggs v. State Farm Fire & Cas. Co.*, 2015 WL 2452694, *2 (S.D. Miss. May 22, 2015), *aff'd Briggs*, 673 Fed. Appx. at 391-92; *Schmermund*, 2008 WL 5169396 at *3. Likewise, Mississippi statutory law requires that allegations related to punitive damages be tried in a separate phase from claims for compensatory damages. *See*

Miss. Code. Ann. 11-1-65(1).  In the context of Plaintiff's claim for insurance benefits, evidence of claim handling and why or on what basis any decision by State Farm was made has no relevance to whether covered damages went uncompensated and, consequently, should not be permitted in the first phase of the trial. *See, e.g.*, *Hartford Underwriters*, 936 So. 2d at 897-98; *Bradfield v. Schwartz*, 936 So. 2d. 931, 938 (Miss. 2006) ("[E]vidence which does not pertain to compensating the plaintiff but only pertains to proof that a punitive award is appropriate, should not be heard by the jury until liability has been determined.").

State Farm recognizes that this Court has previously stated that "it is difficult to envision a breach of an insurance contract lawsuit without consideration of the policy provisions or the procedure utilized in handling the claim." *Payment v. State Farm Fire & Cas. Co.*, 2008 WL 5381925, at *3 (S.D. Miss. Dec. 18, 2008) (Senter, J.).  While policy provisions are generally essential to determining coverage, the existence of coverage itself is not at issue in this case; rather, the issue is the extent of covered damages. *See* Policy [Doc. 57-3].  As such, Phase One should be limited to the extent to which Plaintiff is entitled to additional insurance proceeds under her policy.  Yet the "procedure utilized in handling the claim" has no relevance whatsoever to what the existence of coverage nor to the extent of Plaintiff's covered damages.  That is, whatever procedure is used in handling the claim has no effect on the merit of the claim itself.  A claim either stands or falls on its own merit, not on whether the investigation and evaluation of that claim is proper or improper.

For instance, the length of State Farm's investigation and alleged delays are irrelevant to whether Plaintiff is due additional payments under her policy. Likewise, State Farm's financial statements should only be admissible in Phase Two, as they would only be relevant to Dunn's claim for punitive damages. Other information related to claim handling, such as the timing and content of communications between State Farm and Plaintiff and her representatives, and State Farm's investigation and evaluation of the claim, should also be excluded in Phase One. This includes, for example, any reference to State Farm's Operational Guidelines, Standard Claims Processes and Jurisdictional References. Moreover, any argument or allegation that State Farm failed to comply with these policies and procedures should be limited to Phase Two. In sum, all such evidence is entirely irrelevant to Plaintiff's breach of contract claim and would only be permitted, if at all, during Phase Two of the bifurcated trial.

Questions of the manner of claims-handling, *e.g.*, how claim representatives investigated the claim and the steps the representatives should have taken to resolve the claim, are all tort issues and evidence for extracontractual and punitive damages claims, as are allegations of State Farm's motives. Such issues arising from State Farm's investigation are "separable in both law and fact from the contract claim asserted by an insured under the terms of the policy." *Hartford Underwriters*, 936 So. 2d at 895. Therefore, Phase One of the trial should be limited to the merits of the claim itself, not the merits of State Farm's investigation of the claim. *Id.* at 898; Miss. Code § 11-1-65(b).

The Supreme Court of Mississippi has made clear that coverage issues must be separated from the issues of the insurer's investigation because an insurer is likely to be unfairly prejudiced and a jury is likely to be confused when testimony regarding the issue of coverage is presented alongside "testimony concerning the issue of how [the insurer] investigated" coverage, *Hartford Underwriters*, 936 So. 2d at 897, and that to not separate them is error. *Id.* at 898.  As explained in *Hartford Underwriters*, to preserve the substantive rights of the insurer, Mississippi law requires that evidence related to coverage be presented separately from evidence related to punitive damages arising from State Farm's investigation and adjustment of Plaintiff's insurance claim. *Id.*  Therefore, in an insurance case where (as here) a plaintiff asserts both contract claims and punitive damages claims, a bifurcated trial in the manner set forth above is the most fair and efficient method.

In *Hartford*, the jury was presented with evidence of a car accident and evidence of the respective fault of the drivers commingled with evidence of how Hartford Underwriters investigated the accident, including "alleged abuses committed by Hartford in handling and ultimately denying Williams's [insurance] claim." *Id.*  By trying those issues together, the trial court erroneously disregarded Mississippi statutory law that is "intended to insulate a jury from evidence meant to disparage the conduct of a defendant until after the jury had determined the defendant was liable." *Id.* at 898 (citing Miss. Code. Ann. § 11-1-65).  The Mississippi Supreme Court reversed, ordered a new trial, and held as a matter of law that the new trial must first "strictly focus [] on the accident and the

applicability of [uninsured motorist] coverage." *Id*. Only thereafter may the jury "hear inflammatory evidence regarding alleged abuses committed by Hartford in handling and ultimately denying" the insurance claim, lest the jury hear "evidence of the manner in which [the insurer] handled her claim instead of focusing on the simple issue of whether [the insurer] breached the parties' insurance contract." *Id*. at 897-98. It is "reversible error" to fail to "separate the contract claims issues from the bad faith issues." *Id*. at 898. The court stated:

> We find that by trying the breach of contract issue along with the bad faith refusal issue, the circuit court not only allowed prejudicial evidence to be heard by the jury, it allowed these two distinct claims to become terminally intertwined. We find this issue raised by Hartford to have merit; therefore, we reverse and remand for a new trial.

*Id*. The Mississippi Supreme Court is "in the best position to determine when claims arising under [state] law warrant separate trials," and, therefore, "the [state] Supreme Court's position on this issue is highly persuasive." *Greil v. Geico*, 2001 WL 1148118, at *1 (N.D. Tex. Sept. 18, 2001).

The Mississippi Supreme Court's decision in *Hartford Underwriters* is consistent with a long line of Mississippi cases holding that the issues of bad faith denial and punitive damages are severable from the issue of coverage. *See, e.g.*, *Bradfield*, 936 So. 2d at 938-39 (reversing where trial court failed to hold a separate evidentiary hearing on punitive damages); *Billingsley v. United Tech. Motor Sys.*, 895 F. Supp. 119, 121 (S.D. Miss. 1995); *Weems v. Am. Sec. Ins. Co.*, 486 So. 2d 1222, 1226-27 (Miss. 1986); *State Farm Fire & Cas. Co. v. Simpson*, 477 So. 2d 242, 250 (Miss. 1985); *Blue Cross & Blue Shield v. Campbell*, 466 So. 2d 833, 842-44

(Miss. 1985); *Harbin v. Jennings*, 734 So. 2d 269, 275 (Miss. Ct. App. 1999) (reversing verdict on punitive damages that a jury reached without statutory bifurcation, the court stated, "[t]he trial court's decision to permit the jury to consider both aspects of damages at the same time at a point when, if the jury had been properly instructed, the issue of 'whether compensatory damages are to be awarded' had not been resolved was in direct contravention of the statute, and, therefore, error.").

The Supreme Court's directive in *Hartford Underwriters* applies with equal force here. Plaintiff's case is premised on the claim that State Farm breached its contractual obligation to pay homeowner's benefits. Mississippi's "substantive law will identify which facts are material" for Plaintiff's coverage claim. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Under Mississippi law, as set forth in *Hartford*, the "issue of how the [insurer] investigate[d]" the insurance claim is not relevant or admissible with respect to the determination of the extent of Plaintiff's covered losses. *Hartford*, 936 So. 2d at 897. Mississippi law further provides that before Plaintiff may seek extracontractual or punitive damages on her claim for insurance benefits, Plaintiff must first establish that she is in fact entitled to compensation under the policy. *See Broussard v. State Farm Fire & Casualty Co.*, 523 F.3d 618, 628 (5th Cir. 2008) ("Mississippi law does not permit parties to recover punitive damages unless they first prove that they are entitled to compensatory damages."); Miss. Code Ann. § 11-1-65(1)(c). It is settled under Mississippi law that a claim for bad faith denial of insurance benefits is "separable

in both law and fact from the contract claim asserted by an insured under the terms of the policy." *Hartford Underwriters*, 936 So. 2d at 895. As stated by the Mississippi Supreme Court:

> the bad faith/punitive damages claim is one separable in law and in fact from the contract claim asserted by an insured under the terms of the policy. This separability exists both with respect to the liability and damages features of the contract claim vis-à-vis the bad faith refusal claim.

*Weems*, 486 So. 2d at 1226. The Mississippi Legislature has codified the same principle: "the trier of fact shall first determine whether compensatory damages are to be awarded and in what amount, before addressing any issues related to punitive damages." Miss. Code Ann. § 11-1-65(b) (emphasis added).

These authorities require a barrier of separation between the evidence and issues related to breach of contract from the evidence and issues related to punitive and extracontractual damages. Here, Plaintiff's contract claim entirely depends on a narrow factual determination: whether Dunn is entitled to additional insurance benefits under her homeowner's policy. But evidence regarding the manner in which State Farm adjusted Plaintiff's claim is immaterial and irrelevant to the extent of the insurance benefits to which Plaintiff asserts she is entitled. Therefore, the first phase of trial must "strictly focus" on the causation of damage to Plaintiff's property (or lack thereof) and the costs of repairing Plaintiff's property, and the Court should enter an order to that effect.

### B. A Bifurcated Trial as Requested Herein is Proper Under Federal Rule of Civil Procedure 42(b).

As outlined above, phasing the trial as set forth herein is consistent with the

protections and procedures provided under Mississippi judicial decisions and under Section 11-1-65 of the Mississippi Code, to which the Southern District of Mississippi has looked in other insurance cases presenting claims for extracontractual and/or punitive damages. *See, e.g.*, *Briggs*, 2015 WL 2452694 at *2, *aff'd Briggs*, 673 Fed. Appx. at 391-92; *Payment*, 2008 WL 5381925 at *3; *Huynh v. State Farm Fire & Cas. Co.*, 2008 WL 80759 at *1 (S.D. Miss. Jan. 7, 2008). Moreover, such a bifurcated trial is also consistent with the purposes of Federal Rule of Civil Procedure 42 in that it will avoid unfair prejudice to State Farm and confusion of the issues that is certain to result from admitting evidence of claims handling and alleged misconduct in Phase One. A bifurcated trial also has the potential to save significant time and judicial resources because, under Mississippi law, Plaintiff's extracontractual and punitive damages claims are contingent upon a finding that Plaintiff is entitled to compensation under their policy in the first place. *Broussard*, 523 F.3d at 628.

1. **Phase One: Evidence and Issues Relating to the Alleged Breach of Contract**

Federal courts within the Fifth Circuit have found the legislative mandate of phased trials in Section 11-1-65 as affirmed by the Mississippi Supreme Court to be "highly persuasive." *See Greil*, 2001 WL 1148118 at *1 (noting that state court decisions "aid the Court in determining whether separate trials should be ordered" because "[state] courts are in the best position to determine when claims arising under [state] law warrant separate trials" and that "the [state] Supreme Court's position on this issue is highly persuasive"). Mississippi federal district courts

hearing claims arising under Mississippi law have bifurcated trials in accord with Mississippi's punitive damages statute. *See, e.g.*, *Barnett v. Skelton Truck Lines, Ltd.*, 2006 WL 2056632, *4 (S.D. Miss. July 21, 2006) (referring to "the strict requirements of § 11-1-65 regarding the necessity of bifurcated hearings for compensatory and punitive claims" and noting that "[i]f the plaintiff receives a compensatory damages award, then the court will try the punitive issue to the jury"); *Beck v. Koppers, Inc.*, 2006 WL 2228876, *1 (N.D. Miss. Apr. 3, 2006) (noting that "the court will treat the issue of punitive damages as required by Mississippi Code Annotated § 11-1-65"); *Jones v. NL Indus.*, 2006 WL 1487026, *4 (N.D. Miss. May 24, 2006) (reserving for later consideration defendant's motion for summary judgment on propriety of punitive damages "given that th[e] statute mandates bifurcated proceedings regardless").

Likewise, in *O'Malley v. U.S. Fidelity and Guaranty Co.*, the Fifth Circuit rejected the plaintiff's appeal of "the district court's bifurcation of the coverage and bad faith issues." 776 F.2d at 500. The Fifth Circuit affirmed the district court's decision to try the matters separately, finding that the district court had properly declined to hear the claim of bad faith "after determining that there was no liability under the insurance policy." *Id.* In reaching this result, the Fifth Circuit reasoned:

> O'Malley [, the plaintiff,] has not presented, nor have we found, any Mississippi case allowing an insured to recover against an insurance company for alleged bad faith in handling a claim if the insured does not prevail on the issue of coverage. In fact, decisions involving Mississippi law indicate that the insured must establish not only that the insurer was liable on the policy, but that the insurer had no "arguable reasons" for denying coverage. Since a recovery on the bad faith claim would not have been possible unless O'Malley prevailed on

> his coverage claim, the district court acted correctly in bifurcating the issues to avoid prejudice and to expedite the trial.

*Id.* at 500-01 (citations omitted; emphasis added). The Fifth Circuit also affirmed the district court's decision to exclude evidence "as to whether or not the [defendants] have engaged in some type of bad faith" from the first phase of trial except where such evidence was independently "relevant and material to the issue of whether [plaintiff was] owed the money under the policies." *Id.* at 501.

In the instant case, as in the cases discussed above, a bifurcated trial is necessary to prevent issue confusion and insulate the jury in Phase One from the inflammatory, prejudicial issues of and evidence regarding Plaintiff's extracontractual and punitive damages claims, while it considers the threshold issue of the extent of covered damages. *See, e.g., Hartford*, 936 So. 2d at 897. Unless such bifurcation is ordered, Plaintiff will almost certainly seek to present "inflammatory evidence regarding alleged abuses committed by [State Farm] in handling … [their] claim," thus improperly focusing the jury on "the manner in which [State Farm] handled [her] claim instead of … the simple issue of whether [State Farm] breached the parties' insurance contract." *Id.*

Evidence relating to State Farm's conduct in adjusting or handling Plaintiff's claim has no bearing on the question of the extent of covered insurance benefits. Fed. R. Evid. 402. Such evidence is thus wholly irrelevant to the issue of coverage and should not be allowed to confuse and prejudice the jury during the trial of Plaintiff's breach of contract claim. Fed. R. Evid. 403. Rather, such evidence should be admitted, if at all, only after the first phase of trial so that evidence related to

claims handling cannot confuse the jury and unfairly sway their verdict on the threshold issue of coverage. *See Hartford Underwriters*, 936 So. 2d at 896-97; *see also Bridges v. Enter. Prods. Co.*, 2007 WL 571074, *3 (S.D. Miss. Feb. 20, 2007) (excluding evidence relevant only to punitive damages from liability and compensatory damages portion of trial); *Beck*, 2006 WL 2228876 at *1 (noting that "the court will not admit evidence during the first stage of the trial that is only relevant to punitive damages"); *Bradfield*, 936 So. 2d at 938 ("If punitive damages are indeed to be awarded within the limitations prescribed by [the punitive damages] statute, then evidence which does not pertain to compensating the plaintiff but only pertains to proof that a punitive damage award is appropriate, should not be heard until liability has been determined."). As such, information related to claim handling, should only be admissible in Phase Two, including any reference to State Farm's internal policies and procedures and any argument or allegation that State Farm failed to comply with these documents.

2. **Phase Two: Evidence and Issues Relating to Plaintiff's Claims for Extracontractual and Punitive Damages**

Should the jury find that Dunn is entitled to additional homeowner's benefits, then before the commencement of Phase Two, the Court should decide whether Dunn's claims for punitive and extracontractual damages should go to the jury. That requires a preliminary determination by the Court as to whether State Farm had an arguable basis for its claim decisions, which "is an issue of law for the court." *See, e.g.*, *Broussard*, 523 F.3d at 628 (citation omitted); *Pioneer Life Ins. Co. of Ill. v. Moss*, 513 So. 2d 927, 930 (Miss. 1987) (explaining that when an insurer has an

arguable basis for the manner in which it adjusts a claim, that basis "utterly preclude[s] the submission of the issue of punitive damages to the jury.") (emphasis added); *Dedeaux v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 318727, at *3-7 (S.D. Miss. Jan. 28, 2013) (granting defendant's motion for summary judgment on extracontractual and punitive damages where the evidence showed that the parties were engaged in a pocketbook dispute). Moreover, "[i]n insurance contract cases, the trial court is responsible for reviewing all evidence before it in order to ascertain whether the jury should be permitted to decide the issues of punitive damages." If, upon reviewing all the evidence, the district court concludes that the insurer acted in bad faith, or that reasonable minds could differ regarding whether the insurer acted in bad faith, then the district court should send the issue of punitive damages to the jury." *Broussard*, 523 F.3d at 627 (citation omitted).

If the bifurcated trial proceeds to a second phase, Plaintiff's alleged claims for punitive damages and extracontractual damages should be tried together in that phase. Commingling the evidence and argument for those claims with Plaintiff's breach of contract claims would be highly prejudicial to State Farm, lead to confusion of the issues, and mislead the jury. Fed. R. Evid. 403.

Plaintiff's claims for extracontractual damages should be tried, if at all, in the second phase of trial. "[T]he Mississippi Supreme Court has been extremely reluctant to allow punitive damages in cases where the insurer did not deny coverage, but only disputed the amount of the claim." *Tutor v. Ranger Ins. Co.*, 804 F.2d 1395, 1399 (5th Cir. 1986) (emphasis added) (determining that the district

court committed reversible error when it did not grant a directed verdict for insurer on punitive damages where the parties were engaged in a legitimate pocketbook dispute). Similarly, extracontractual damages, like punitive damages, may be awarded only if the insurer had no arguable basis for the manner in which it adjusted an insured's claim. *See, e.g.*, *Windmon v. Marshall*, 926 So. 2d 867, 874 & n.2 (Miss. 2006) (affirming directed verdict on extracontractual damages because the insurer "had a reasonably arguable basis for denying the claim"); *Hans Constr. Co., Inc. v. Phoenix Assurance Co. of N.Y.*, 995 F.2d 53, 56 (5th Cir. 1993) (Mississippi law "will allow extra-contractual damages for failure to pay on an insurance policy only when there is *no* arguable reason for such failure," and "[a]n arguable reason, therefore, shields the insurance company from liability for both punitive damages and extra-contractual damages") (emphasis in original); *Reece v. State Farm Fire & Cas. Co.*, 684 F. Supp. 140, 145-46 (N.D. Miss. 1987). Plaintiff's claims for extracontractual and punitive damages both share an essential element of proof, namely, whether State Farm had an arguable basis for its claim decision. *See Broussard*, 523 F.3d at 628. Accordingly, Rule 42(b)'s goals of efficiency and fairness will be best served by trying Plaintiff's claims for extracontractual damages together with Plaintiff's claims for punitive damages. The Fifth Circuit has affirmed the Court's bifurcation of trials in this manner. *Briggs*, 673 Fed. Appx. at 391-92.

Plaintiff's claims for attorneys' fees must be resolved by this Court if, and only if, there is a finding of liability for punitive damages. This Court held "that

attorney's fees are justified where punitive damages are awarded." *Schmermund*, 2008 WL 5169396 at *3. Indeed, Mississippi law steadfastly adheres to the American Rule that a party is responsible for its own attorneys' fees absent an award of punitive damages. As the Fifth Circuit held, the "prevailing view" in Mississippi is that "attorney's fees are not recoverable absent an award of punitive damages." *Greer v. Burkhardt*, 58 F.3d 1070, 1075 (5th Cir. 1995); *see also Sobley*, 302 F.3d at 343. "In the absence of a showing of gross or willful wrong entitling the Movant to an award of punitive damages, the Mississippi Supreme Court has never approved of awarding attorneys fees to the successful litigant." *Miller v. Allstate Ins. Co.*, 631 So. 2d 789, 795 (Miss. 1994) (emphasis added); *accord Spencer v. State Farm Mut. Ins. Co.*, 891 So. 2d 827, 830 (Miss. 2005) (same); *Miss. Power & Light v. Cook*, 832 So. 2d 474, 487 (Miss. 2002) (en banc) (same); *Aetna Cas. & Sur. Co. v. Steele*, 373 So. 2d 797, 801 (Miss. 1979) (same); see Miss. R. Civ. P. 54 cmt.

If an attorneys' fee award is considered, the decision to award attorneys' fees rests with the "sound discretion of the trial court" rather than the jury. *Cook*, 832 So. 2d at 478; *accord BellSouth Pers. Commc'n, LLC v. Bd. of Supervisors of Hinds Cty.*, 912 So. 2d 436, 446 (Miss. 2005); Miss. Code Ann. § 11-55-7. An attorneys' fees award must be reasonable and well supported by the Court's conclusions of fact and law. "It is well settled in this State that what constitutes a reasonable attorney's fee rests within the sound discretion of the trial court" and must "be supported by credible evidence" and "based on findings of fact and conclusions of law concerning" relevant factors. *Cook*, 832 So. 2d at 486-87 (citation omitted); *see Ford Motor Co. v.*

*Tennin*, 960 So. 2d 379, 395-96 (Miss. 2007) ("Any award of attorney's fees and expenses should be supported with factual determinations by the trial court.").

## CONCLUSION

Accordingly, for all the foregoing reasons, State Farm respectfully requests that this Court enter an *in limine* order bifurcating the trial of Plaintiff's claims as follows:

1. In Phase One, the Court should try the issue of the nature and extent of Plaintiff's covered damages, and all evidence relevant to this discrete issue should be permitted.

2. If the jury finds uncompensated covered damages, the Court should, in its role as "gatekeeper," conduct an evidentiary hearing, as required by Mississippi Code Section 11-1-65(1)(c), to determine whether the issues related to extracontractual and punitive damages should go to the jury at all.

3. If the Court determines that the issues related to punitive damages should go to the jury, then in Phase Two, the Court should try Plaintiff's claims for extracontractual and punitive damages (including attorneys' fees).

The Court should further appropriately limit the introduction of evidence in each phase. In particular, the Court should exclude evidence of or reference to Plaintiff's alleged claims arising from State Farm's claim handling, including claims for extracontractual damages and punitive damages, prior to a determination that State Farm failed to compensate Plaintiff for covered damages.

WHEREFORE, the Court should grant State Farm's Motion *in Limine* No. 1 and grant the relief requested herein and in State Farm's Motion.

**DATED:** June 27, 2024

          Respectfully submitted,

          BRYAN, NELSON, SCHROEDER,
          CASTIGLIOLA & BANAHAN, PLLC
          Attorneys for Defendant,

          **STATE FARM FIRE AND CASUALTY COMPANY**

          BY: */s/ Calen J. Wills*
          **JOHN A. BANAHAN (MSB 1731)**
          **CALEN J. WILLS (MSB 104271)**

**BRYAN, NELSON, SCHROEDER,
CASTIGLIOLA & BANAHAN, PLLC**
1103 Jackson Avenue (39567)
Post Office Drawer 1529
Pascagoula, MS 39568-1529
Telephone No.  (228) 762-6631
Fax No.  (228)769-6392
john@bnscb.com
calen@bnscb.com

**CERTIFICATE OF SERVICE**

I, **CALEN J. WILLS**, one of the attorneys for the Defendant, **STATE FARM FIRE AND CASUALTY COMPANY**, do hereby certify that I have this date electronically filed the foregoing Memorandum in Support of Motion *in Limine* No. 1: To Bifurcate Trial with the Clerk of Court using the ECF system which sent notification of such filing to all counsel of record.

**DATED:** June 27, 2024

/s/ *Calen J. Wills*
**CALEN J. WILLS (MSB 104271)**

**BRYAN, NELSON, SCHROEDER, CASTIGLIOLA & BANAHAN, PLLC**
1103 Jackson Avenue (39567)
Post Office Drawer 1529
Pascagoula, MS 39568-1529
Telephone No.  (228) 762-6631
Fax No.  (228)769-6392
calen@bnscb.com