IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**BETHANY DUNN**                                                                  **PLAINTIFF**

**V.**                                    **CIVIL ACTION NO. 2:23-cv-72-KS-MTP**

**STATE FARM FIRE AND
CASUALTY COMPANY**                                             **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

**I.**     **BACKGROUND**

    **A. Facts**

This lawsuit arises from an insurance claim related to a house fire. Plaintiff Bethany Dunn ("Dunn"), inherited property in Petal, Mississippi. At all relevant times, the property was insured by State Farm Fire and Casualty Company ("State Farm"). The fire occurred in late August 2022, and shortly thereafter, Dunn reported the loss and that the home was a total loss. State Farm promptly inspected the property and determined the house was a total loss. On September 20, 2022, State Farm tendered the Coverage A policy limits of $247,562.00, minus the deductible, along with a $2,000 contents advance, for a total of $248,403.00. [41-4] at p. 26-27. Dunn filed a complaint with the Mississippi Insurance Department[1] on September 28, 2022, stating she was being treated unfairly and was never "issued any type of relief help" or "displacement assistance." [37-4] at p. 1. On November 2, 2022, State Farm's Kenya Cooper sent a response letter to the Mississippi Insurance Department outlining State Farm's handling of

---

[1] The Defendant refers to the "Mississippi Department of Insurance" and "Department of Insurance" throughout its filings with the Court. *See* [38] at p. 4. The Court assumes this is just a typo and that the Defendant means the Mississippi Insurance Department. *See* https://www.mid.ms.gov.

the case up to that point. [37-6]. State Farm received Dunn's first contents submission on November 3, 2022.

On November 4, 2022, Dunn sent State Farm an email advising she was submitting a purchase agreement for a new home as well as a debris removal invoice. The Purchase Agreement totaled $257,366.00. The debris removal invoice totaled $14,266.76. On December 8, 2022, State Farm approved payment for uncontested contents in amount of $69,311.23 as well as a $10,796.16 payment for option ID/debris removal due to Dunn's submitted documents. [41-4] at p. 27; [37-3] at p. 7. On December 16, 2022, Alfonso Cornista, an independent adjuster, spoke with Dunn to follow up on the remaining contents items, and Dunn advised she has been focusing on securing a new home prior to the holidays and would have the additional information shortly after the new year.

On December 29, 2022, State Farm received an email from Plaintiff's counsel advising he represented Dunn and inquiring about finalizing the contents review. The letter noted that some items are irreplaceable items that Dunn cannot afford to replace without further payment from State Farm and requested that State Farm "provide some clarity" on its evaluation of the contents. Cornista spoke with Dunn on December 30 and confirmed she was represented. The next day, Cornista contacted Plaintiff's counsel's office to ask about a formal letter of representation, and the receptionist advised it would be sent. Cornista spoke with Plaintiff's counsel on January 3, 2023, who advised he would send a letter of representation later that day. Plaintiff's counsel sent Cornista an email that afternoon advising that he was representing Dunn and his email would serve as his letter of representation. That same day, State Farm Team Manager Charlie Foster advised Cornista to send an acknowledgement letter to Plaintiff's counsel along with a copy of the request for information letter previously sent to Dunn.

On January 9, Cornista sent Plaintiff's counsel a letter acknowledging his representation along with the previous request for information letter, and Cornista also requested a signed letter of

2

representation. In an email to Cornista on January 18, Plaintiff's counsel noted that Dunn previously uploaded requested breakdowns, advised that Dunn would submit additional documents, and inquired about the deductible and debris removal. On January 22, Dunn submitted a supplemental contents list. [37-21]. On January 23, Dunn submitted additional information via email. [41-8] at p. 3. On January 26, February 3, and February 10, Dunn's attorney sent three follow up emails. [41-8]; [37-3] at p. 3-4. Around the same time as the follow up emails, Cornista attempted to contact Plaintiff's counsel's office to secure a formal letter of representation without success. On February 9, 2023, State Farm closed the claim subject to re-opening upon submission of the previously requested letter of representation or request for information.

In April 2023, Dunn filed her complaint in the Circuit Court of Forrest County. State Farm then removed the matter to this Court. Dunn filed suit because "219 days after the fire, State Farm had not evaluated the additional information provided by Ms. Dunn after the partial payment; State Farm had closed the claim and never reopened the claim; State Farm had not paid for debris removal despite approval for payment; and State Farm would not respond to Ms. Dunn's lawyers…." [41] at p. 4. About four months after the lawsuit was filed, State Farm tendered an additional $24,160.57 for contents with interest included and $13,871.05 in option ID/debris removal coverage with interest included. [41-4] at p. 1-2. State Farm admits that it initially "missed Dunn's second contents submission and underpaid Dunn's debris removal and option coverage." [38] at p. 7. On March 15, 2024, State Farm tendered an additional $214.00 for a light fixture.

In the Complaint, under the heading "Causes of Action," Dunn includes six counts: 1) failure to pay claim; 2) failure to conduct an adequate investigation; 3) violation of the obligation of good faith and fair dealing; 4) acting without an arguable basis in fact or law in denying claim; 5) acting with malice and gross negligence in disregard of Dunn's rights; and 6) intentional and/or negligent infliction of emotional

distress. Dunn seeks several types of damages, including actual damages and punitive damages.

## II. DISCUSSION

### A. Legal Standard and Applicable Law

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (citation omitted). Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). "In deciding whether a fact issue has been created, the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138 (quoting *Daniels*, 246 F.3d at 502). Nevertheless, a court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

"Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v.*

*Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted). The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* However, "the movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 333-34 (1986)). In such cases, the movant may not simply point to the absence of evidence supporting the nonmovant's case. *See Id.* Moreover,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record…; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible as evidence." Fed. R. Civ. P. 56(c)(2). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).

**B. Analysis**

**1. There are genuine issues of material fact that preclude summary judgment.**

"Under Mississippi law, the plaintiff bears the burden of proving his right to recover under an insurance policy." *Tuepker v. State Farm Fire & Cas. Co.*, 507 F.3d 346, 356 (5th Cir. 2007). "That basic burden never shifts from the plaintiff." *Britt v. Travelers Ins. Co.*, 566 F.2d 1020, 1022 (5th Cir. 1978). The insured has the burden of proving his right to recover under a policy, but the insurer has the burden of proving that an exclusion applies. *Tuepker*, 507 F.3d at 356; *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 618 (Miss. 2009). The Court's goal in applying an insurance policy is

to "render a fair reading and interpretation of the policy by examining its express language and applying the ordinary and popular meaning to any undefined terms." *Corban*, 20 So. 3d at 609.

"In Mississippi, insurance policies are contracts, and as such, they are to be enforced according to their provisions." *Id.* "A breach-of-contract case has two elements: (1) the existence of a valid and binding contract, and (2) a showing that the defendant has broken, or breached it." *Maness v. K&A Enters. Of Miss., LLC*, 250 So. 3d 402, 414 (Miss. 2018)); *see also Robinson-Lewis v. State Farm Fire & Cas. Co.*, No. 1:22cv186-LG-RPM, 2023 WL 7929006, *3 (S.D. Miss. June 5, 2023). The primary question for a claim for breach of an insurance contract is whether the insurer owes any insurance proceeds to the policyholder. *Thomas v. Nationstar Mortg., LLC*, No. 2:22cv88-HSO-LGI, 2023 WL 2780360, at 9 (S.D. Miss. Feb. 6, 2023) (citing *Mahli, LLC v. Admiral Ins. Co.*, No. 1:14cv175-KS-MTP, 2015 WL 4915701, at 16 (S.D. Miss. Aug. 18, 2015)).

On January 22, Dunn submitted a supplemental contents list, and on January 23, Dunn submitted additional information via email. Shortly after receiving this information, State Farm closed Dunn's claims and refused to re-open them until a formal letter of representation was submitted. State Farm claims that even though it made a mistake in missing the submission of this additional information, it cured the mistake later by tendering additional money, but this payment was made about four months after the lawsuit was filed. Deposition testimony seems to indicate that State Farm told Cornista not to respond to emails from Dunn's counsel even though State Farm had indicated to the Mississippi Insurance Department that it was willing to work with Plaintiff's counsel, and Dunn confirmed her representation with State Farm:

> **Q.** So even after State Farm told the insurance department that they were going to work with our office can we agree that you were told not to respond to our emails --
>     **Mr. Wills:** Object to form --
> **A.** We had to have a letter of representation.
> **BY MR. WAIDE:**

>   **Q.** I understand that. But you were told not to respond to our emails any further. Is that fair?
>   **A.** Yes.

[41-1] at p. 33-34. State Farm claims that it initially had justification for not responding to Dunn's counsel due to recent misrepresentations from other lawyers, but this does not change the fact that deposition testimony indicates that even after Dunn confirmed representation and State Farm told the Mississippi Insurance Department that it would work with Dunn's counsel, State Farm told Cornista that he should not respond to Dunn's counsel.

Further, the parties dispute the amount owed under the policy. The policy at issue in this case states,

>   **COVERAGE B – PERSONAL PROPERTY**
>   1. **B1 – Limited Replacement Cost Loss Settlement.**
>      **a.** *We* will pay the cost to repair or replace property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY,** except for property listed in item b. below, subject to the following:
>      (1) until repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged property;
>      (2) after repair or replacement is completed, *we* will pay the difference between the *actual cash value* and the cost *you* have actually and necessarily spent to repair or replace the property; and
>      (3) if property is not repaired or replaced within two years after the date of loss, *we* will pay only the *actual cash value.*
>      b. *We* will pay market value at the time of loss for:
>      (1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;
>      (2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and
>      (3) property not useful for its intended purpose.
>   …
>   **Option ID – Increased Dwelling Limit.** *We* will settle losses to damaged *building structures* covered under **COVERAGE A – DWELLING** according to the **Loss Settlement Provision** shown in in the *Declarations.*
>      1. If the amount *you* actually and necessarily spend to repair or replace the damaged *dwelling* exceeds the limit of liability shown in the *Declarations* for Coverage A – Dwelling, *we* will pay the additional amount not to exceed the Option ID limit shown in the *Declarations.*
>      2. If the amount *you* actually and necessarily spend to repair or replace damaged *building structures* covered under **COVERAGE A – DWELLING, Other**

>**Structures** exceeds the limit of liability shown in the ***Declarations*** for Other Structures, ***we*** will pay the additional amounts not to exceed 10% of the Option ID limit shown in the ***Declarations.***

[37-2] at p. 26, 41. State Farm argues that it overpaid Dunn because she did not actually purchase the new house and she is therefore not entitled to the Option ID coverage. Dunn claims that State Farm still owes her at least $62,850 because State Farm wrongly applied depreciation and should have instead paid market value for certain items.

Moreover, the following deposition testimony supports the notion that genuine issues of material fact exist to preclude summary judgment.

>**Q.** Would it be appropriate to close a claim if the debris removal had not been fully paid yet?
>**A.** No
>**Q.** And Ms. Dunn's policy did provide for debris removal; right?
>**A.** Yes.
>…
>**Q.** Why was there no response to this request from you or State Farm to this email on February 10, 2023? Why was there no response?
>**A.** We hadn't received a letter of representation.
>**Q.** And nobody responded at all to this email to your knowledge. Is that Correct?
>**A.** Yes.
>…
>**Q.** You never responded; did you?
>**A.** No.
>**Q.** You were directed not to respond. Is that right?
>**A.** Correct.
>**Q.** And the people who directed you not to respond worked for who?
>**A.** State Farm.
>…
>**Q.** Yeah, Exhibit 4. Would you agree something like a Dale Earnhardt signed ball would be memorabilia?
>**A.** Oh, yes.
>**Q.** Do you know why specifically zero dollars were paid for the Dale Earnhardt ball?
>**A.** I don't know why that would be.
>**Q.** Do you agree with me that would be something important for the adjusters to review to make sure it was done properly?
>**A.** Right.
>**Q.** And if nothing was paid for that that would be a problem; right?
>**A.** Yes.
>…

> **Q.** Let me ask you about that. So on this particular claim, when it was closed, isn't it correct to say that it was closed and there had been a payment approved for debris removal that had not been sent to Ms. Dunn. Isn't that right?
> **A.** Yeah…A portion of it was paid. Another portion wasn't. So, as you know, we later did pay it but I would be kind of be remiss not to add that we were also told that the insured didn't end up doing any of it. Those are only payable if they actually do the work….Based upon those documents, we did not pay what appeared to be owed at that time but since she hasn't done the work so far as we know now it looks like it was an overpayment.
> …
> **Q.** Okay. Would it be proper to close a claim with a pending payment?
> **A.** As far as if you knew you needed to issue a payment and instead of issuing that payment you closed a claim?
> **Q.** Correct.
> **A.** Yeah, that generally would not be appropriate.
> …
> **Q.** Does the claim file indicate that anybody ever called and discussed why items listed by Ms. Dunn as antique were depreciated and paid less than the value indicated on the list?
> **A.** Not that I recall.
> **Q.** Doesn't State Farm's policies state that that's what you're supposed to do?
> **A.** If a policyholder has, pretty much, any question about their settlement, or whatever, generally, yes, we would want to have a conversation with them and maybe even follow up in writing to address that question.
> …
> **Q.** … Do you know why [Cornista] was told not to respond to communications from our office in late January and early February of 2023?
> **A.** … I had told him, hey, since we've verified verbally with the policyholder that, hey, Daniel Waide is my representative, we can go ahead and communicate with him. Obviously that didn't happen. I can't tell you what [Cornista] was thinking in that circumstance….

[41-1] at p. 25, 30-32, 49 (deposition of Alfonso Cornista); [41-6] at p. 21-22, 30-31, 43-44 (30(b)(6) deposition of State Farm's Charlie Foster).

**2. Acting without an arguable basis in fact or law in denying claim, acting with malice and gross negligence in disregard of Dunn's rights, and intentional and/or negligent infliction of emotional distress**

To establish a claim that an insurer delayed payment in bad faith, a plaintiff must prove three elements:

> (1) State Farm [owed] a contractual obligation to [Plaintiff];
> (2) State Farm lacked an arguable or legitimate basis for its delay in paying [Plaintiff's] claim; and

9

> (3) State Farm's failure resulted "from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an intentional tort."

*James v. State Farm Mut. Ins. Co.*, 743 F.3d 65, 70 (5th Cir. 2014) (quoting Jeffery Jackson, Miss. Ins. Law & Prac. § 13.2 (2012)). The decision "to submit a delay-of-payment claim to a jury is a highly fact-sensitive analysis." *Id.* To be sure, "[t]he totality of the circumstances and the aggregate conduct of the defendant must be examined before punitive damages are appropriate." *Dey v. State Farm Mut. Auto. Ins. Co.*, 789 F.3d 629, 633 (5th Cir. 2015) (citations omitted). Even if an insurance company breached its policy to a plaintiff, the plaintiff can still only recover for bad faith breach-of-contract if the insurance company lacked an arguable basis for denying coverage or for delaying payment to a plaintiff. An "arguable basis" is "nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to [the] heightened level of an independent tort." *Univ. Life Ins. Co. v. Veasley*, 610 So. 2d 290, 293 (Miss. 1992) (citations omitted); *see also Jackson v. State Farm Fire & Cas. Co.*, No. 1:23cv24-HSO-BWR, 2024 WL 1183670, *9 (S.D. Miss. Mar. 19, 2024).

In examining the concept of an "arguable basis," "the initial burden placed on the insurer is low: it need only show that it had reasonable justifications, either in fact or in law for its actions." *James*, 743 F.3d at 70 (internal quotations and citations omitted). Thereafter, "the insured bears the burden of demonstrating that the insurer had no arguable reason" for the delay. *Id.* The burden on the plaintiff is heavy: she must demonstrate that "there was no reasonably arguable basis for denying the claim." *Dey*, 789 F.3d at 633 (internal citations and quotations omitted). A "plaintiff's burden in this respect likewise exists at the summary judgment stage where the insurance company presents an adequate prima facie showing of a reasonably arguable basis for denial so as to preclude punitive damages." *James*, 743 F.3d at 70 (citations and quotations omitted). Of high importance is that "[t]he question of whether State Farm had an arguable basis" for the manner in which it handled Dunn's claim "is an issue of law for the court." *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 628 (5th Cir. 2008) (citations and internal

10

quotation marks omitted).

As this Court previously explained,

> The following acts or omissions on the part of insurers are characteristic of the type of conduct that has been found to rise above mere negligence and into the realm of bad faith: … ***delaying payment on a claim for several months after the insurer admits to owing the claim*** …. Conversely, clerical errors, isolated mistakes, delays resulting from full claims investigations, and the initiation of coverage actions will not ordinarily support an award of punitive damages.

*Russ v. Safeco Ins. Co. of America*, 2013 WL 1310501, *16 (S.D. Miss. 2013) (citing Jeffery Jackson, Miss. Ins. Law & Prac. § 13.5 (2012)). The Mississippi Supreme Court affirmed a punitive damages instruction because an unexplained delay of eight months, clear violation of the policy, and awareness that the insured was suffering economically "left a strong inference that [the insurer's] conduct was motivated by economic gain." *Caldwell v. Alfa Ins. Co.*, 686 So. 2d 1092, 1098 (Miss. 1996) (citing *Travelers Indem. Co. v. Wetherbee*, 368 So. 2d 829, 835 (Miss. 1979)). The Mississippi Court of Appeals noted that a six-week delay in payment is only simple negligence and the importance of the insured's cooperation with the insurer's investigation. *Pilate v. American Federated Ins. Co.*, 865 So. 2d 387, 394, 400 (Miss. Ct. App. 2004) ("[Plaintiff] may not linger in the shadows and be rewarded for a short delay necessitated by a reasonable investigation….").

Here, State Farm closed the claim in February of 2023 subject to re-opening upon submission of a formal letter of representation or additional information for Dunn's contents claim. Around this same time, Dunn's counsel sent several follow up emails with no response from State Farm via email, but according to the claim notes, State Farm did attempt to reach Dunn's counsel to further request a letter of representation or additional information. At this point in time, State Farm concedes that it missed Dunn's second contents submission, and Cornista refused to move the claims forward without a letter of representation even though Dunn confirmed she was represented and Cornista was given permission to communicate with Dunn's counsel. State Farm later re-opened the claim and issued additional money

11

based on the submissions, but this was only several months after Dunn submitted the information and filed her lawsuit. Further, State Farm argues "[it] was actively investigating Plaintiff's claim which reflects [it] did not act in bad faith and is entitled to partial summary judgment on Plaintiff's claims for extra-contractual and punitive damages." [38] at p. 15. However, State Farm was presumably not actively investigating Dunn's claims in the time between closing her claims and the filing of the lawsuit. The Court finds that genuine issues of material fact exist because State Farm has not presented an arguable or legitimate basis for its actions in delaying payment and refusing to move Dunn's claims forward, and Dunn has presented evidence that State Farm committed a willful or malicious wrong, or acted with gross and reckless disregard for the insured's rights. Accordingly, the Court denies State Farm's motion for summary judgment or in the alternative, partial summary judgment.

### III. CONCLUSION

Accordingly, for the reasons explained above, the Court hereby **DENIES** Defendant's Motion for Summary Judgment [37].

SO ORDERED AND ADJUDGED this 22nd day of July 2024.

        /s/ Keith Starrett
       KEITH STARRETT
       UNITED STATES DISTRICT JUDGE